Case No. 15-4242 Henry Solari et al. v. Goodyear Tire and Rubber Co. Argument not to exceed 15 minutes per side. Mr. Prodell, you may proceed for the appellant. Distinguished members of the panel, the decision of the Northern District Court before you today deserved reversal. I shall briefly explain why in 11 minutes and would like to reserve 4 minutes for rebuttal. First, the District Court issued a defective conditional order of dismissal. Defective because it issued the order without receiving the agreement that defendant appellee would comply with the conditions. It issued the order despite the fact that defendant actually expressly indicated that it does not agree to make available documents that are necessary for a civil action in France unless these documents are required by a French court. And it's defective also because it was granted without providing any mechanism to allow plaintiff to reinstate the action if the conditions were not met. Don't the civil rules provide a mechanism if that's the case? Sorry, Your Honor. Wouldn't the assumed sake of argument that the defendant in this case didn't do what the judge assumed they were going to do, you could obtain additional relief from the District Court at that point, couldn't you? That's a very interesting point. If we look at the federal civil rules, the federal rules of civil procedure, I think one of the only angles would be Rule 60B motion. Now, the Rule 60B motion would probably require, in fact, using Rule 60B3 showing a misconduct on the part of the defendant. But if a defendant hypothetically makes a representation to a District Court that if this case goes back to another country, we'll do X, X isn't done, I would think your chance of relief in front of the same district judge would be pretty good. I would agree with you, Your Honor, and that's precisely what's lacking in the conditional order. There were no condition that Goodyear actually issued that statement. And because there were not that condition present, we don't have a statement, and so we don't have a promise, and we can't really use 60B3 as easily if there were, in fact, a promise. And other than that, there would be no other way to do it. I'm not sure that I can imagine yet, and certainly that the other side has not proposed. Probably we all would agree that it would have been better had the District Court made that a part of its order. But what standard of review do we apply to the feature that it is not included? Is it not an abusive discretion standard?  It's really in light of the other agreement, the other statements by Goodyear in various ways, in briefing, et cetera, that it would cooperate. Well, so to the first prong of your question, I would say that it's an abusive discretion standard. But as the Court is well aware, this abuse of discretion can result either because of a misappreciation of the facts or of the law. And here, when your Honour refers to the previous statements that Goodyear made, it's actually very interesting to look at them. Because if we look at the condition of the District Court, the District Court said, well, I will grant you dismissal if you provide evidence for a fair trial. While during the proceedings, Goodyear said, I swear I will give all the evidence required by a French court. Now, a little point of foreign law, because some reasonable exchange on that point. We know that that's part of the deal. Making the assertion that basically says, we will give the documents that a French court would require, necessary, means that they will in fact dispute plaintiff's request for documents. Because it's only when a request for documents is refused by a party, that then the parties move to the court and ask for a ruling. So in fact, the very statement that Goodyear made during the proceedings, and then remade during that appeal, that he would agree to give the documents and provide the witnesses that a French court deemed necessary, means that they will dispute the production of those documents. But if the French court says you must produce these things, then they're stuck with producing them, per that stipulation. That's actually a very interesting point, Your Honor, you're making. Because in this particular case, and I will come back to it later on, but this case is very peculiar. It's not exactly the same as other cases that have been cited on both parties' accounts. In this particular case, we have a track record of a defendant reluctant to produce any piece of documents. I'm not sure the French courts can handle such reluctance. We have actually a particular example where we have a court order and then just a failure to implement it. Back in 2009, the French subsidiary of Goodyear was sued before a criminal court. In fact, the managers of that subsidiary, one of which was American, Jeffrey Smith, were sued before a criminal court. They were sued because they refused to provide the employees with a data sheet detailing the toxic products that was used in 2009. The ruling eventually came in October 2011. Right after that ruling, in November 2011, the employees meet with the management and say, we require the information. The management says, we don't have it. We have sent a request to Akron, and since then, this information has still not been provided. That's a different case you're talking about? It's a different case, but basically making the point that the information is in Akron, and in Akron, they don't really care to provide the information in France, even with a court order. I would be interested in hearing about the merits proper here of form nonconvenience, apart from any defect in the form of the district court's order. I guess on that point, first of all, it is a deferential standard of review that we must apply. These are harms that happened in France to French workers. It seems like the evidence, a lot of it's in France. Some is in the United States. France is a great country with excellent courts. It is. I'm scratching my head about why would we say it's an abuse of discretion for the district judge to say the French courts are the better courts to resolve this dispute whose events happened in France? Well, actually, Your Honor, moving to the merits is part of my second point and third point. It is true that it's a deferential standard, and as I tried to emphasize earlier, the court disregarded some of the facts that were presented to it, and to a certain extent when that disregard is too big, it constitutes an error, and your court is definitely able to reverse an order on that manifest error of facts, appreciation of facts. However, going to the merits of the form nonconvenience, I can see the appeal for a district court or for any court of appeals to say, look, after all, France is the country of human rights declaration. What the heck if they can't have proceedings there? It would be almost disrespectful to say that they can't adjudicate a claim that happened on their soil. At the risk of repeating myself, some of the plaintiffs already tried other actions in France where they were opposed with blocking, I would say, strategies and complete refusal to abide by the laws and even the orders. Is there any reason to think that that would not be the same problem in the U.S., if it's an obstructionist kind of approach? I believe, Your Honor, that it would be much more difficult for a defendant that is headquartered in the jurisdiction where the case is pending to continue to obstruct justice. If I was to make a request for documents under the regular discovery process, they would have to answer. And if eventually they don't answer or they don't want to provide me with documents, I would go to the court. And I believe that the court would be particularly displeased with a blocking strategy if it actually requests the defendant to comply. As opposed to a French court? As opposed to a French court. I don't quite get why. You think there's more social pressure? No. What I think, Your Honor, is let's admit the case goes back to France. I'm asking the other side to provide me with documents. They refuse, as they already said they will. We go before the French court, and the French court actually says, give them this document. But as they did in the past, they don't provide us with any information or documentation. Now, at this point, I'm stuck with going back to Ohio, to the headquarters, trying to either enforce the judgment I have in France or reinstating the action. Why don't you just go back to the French court and say they're not complying with your order, Your Honor, and either hold them in contempt, sanction them? Do the French courts have that power? To answer more precisely to your question, I actually have a French attorney in the courtroom, if you want, who came together with some employees. Well, the problem is there's no assets to exercise these powers in France. We're suing Goodyear, Akron. Well, there's no, as I'm sure. Well, now we're talking about collectability. Collectability, yes. Okay, so we were on discovery. Now let's save the rest of your time. Apparently, you've saved time. Yes. Okay, well, your time is up for now, and we'll hear from you again on rebuttal. Thank you, Your Honor. Thank you. Good morning, and may it please the court. Jack Newman of Jones Day for the defendant, Appellee Goodyear Tire and Rubber Company. I suggest to the court that the pivotal point here, because it comes up repeatedly in the cases and in the analysis, is that what we have here are overseas plaintiffs. That's point number one. And secondly, that what we have is a situation involving incidents that did or didn't happen, warnings that were or were not given, controls that were or were not in place, representations that were or were not made, exposures that did or did not happen on a factory floor. And in a way, it helps it's in France because, as you have seen from the cases and as you know and as Judge Kethledge, you pointed out, France is a well-recognized jurisdiction for civil litigation. I don't think I've seen one case at all where France has been determined to be an unacceptable venue because it just didn't have the remedies and so forth. And it's been repeatedly found to be an acceptable jurisdiction to proceed. Excuse me, Mr. Newman. What about counsel's point that in the event, two things, what exactly did Goodyear agree to, to produce the documents once a court requires it, a French court requires it? To turn them over. Okay. What did we agree to? We were the ones that proposed the conditions, Your Honor. And you have seen in the cases that sometimes conditions are imposed and sometimes they're not. And when they are imposed, they're imposed. Sorry, did you say you imposed the conditions? We suggested the imposition of the conditions. That's in the district court. Yes, Your Honor. We said we would agree to these conditions. That's in the Ubersax affidavit. So we raised them in the first place. Courts sometimes impose them, sometimes don't. In the Sixth Circuit, it's not necessary. They really first came up under circumstance where a court was unsure whether it would be an adequate forum and so it imposed conditions. But we suggested them. Now, when courts do suggest, do impose them, they're more or less the same but not always hike verba, if you will. In this particular case, the judges were not quite hike verba. We didn't ask for reconsideration. We did not appeal. And we have not cross-appealed. That's an order of the court. We will abide by the order of the court. And if it's necessary for someone to say so, I'll say it. We will abide by the order of court. I don't think that's necessary because it's a court order. And so those are the conditions that he laid down, and we will abide by them. They're more or less the ones that we suggested, and in one way or another are ones that reflect what other courts have suggested too. And heaven forbid if under some circumstance we were found to have gone astray from those because we'll be right back here, I'm sure. And we won't. We say we will abide by them. We will abide by them. And so it's as simple as that. Now, there was some discussion about the merits of forum nonconvenience, and I go back to the key point that I opened with, and that is that the cardinal factor here I suggest to you is that it's their overseas plaintiffs. If you look at all the cases, that's not necessarily definitively dispositive, but it is critically important. And courts, including our own Sixth Circuit in the Dowling case, which involved foreign plaintiffs, what the court said was with respect to private interest factors, this is characterizing Piper. With respect to private interest factors, the court held, Supreme Court, where it was shown the trial in the plaintiff's chosen forum would be burdensome for the defendant. This finding is sufficient to support a forum nonconvenience dismissal. And so there is a lot less deference given to the choice of forum when it's a foreign plaintiff. And I offer to the court what should be obvious to everybody here, and that is these plaintiffs did not come to the United States in order to sue Goodyear. They sued Goodyear in this case in order that they could come to the United States and have a hook for having the case here, and among other things, putting Goodyear to the burden of having to go through all the complicated processes overseas in France in order to develop its case. To encounter the blocking statute, there's been discussion of the blocking statute, which is not frequently enforced over in France, but it is a statute that says in aid of foreign proceedings, you can't be over here informally or otherwise doing work. You've got to go through the Hague Convention. And we have a situation, Your Honors, where this isn't, let's say, a contract negotiation where there are a couple people in France and a couple people here, we know who they are, and something could be done. This is a situation where in order to defend itself, Goodyear must do a very substantial investigation over in France. There are lots of people that it would need to talk to, former employees of GDTF. That will all be true anyway, will it not? Yes. It's required, but it will be in France. With French lawyers and French local people who don't encounter the blocking statute and who can do it in connection with their own procedures over there. And the equivalent of some kind of like subpoena power or something as opposed to going through the Hague? Yes. Yes, Your Honor. And let me just say that if it were, and you see it in the cases, if it were a domestic plaintiff, that wouldn't necessarily mean that the case wouldn't go to France. But courts say, wait a minute, it's a plaintiff who's here in the United States, it's our legal system, our legal system has certain ways of going about doing business. If someone in the U.S. wants to bring a case that's located in France in the U.S., they'll look a little bit more carefully at that. Of course, this is the very kind of case, and this is why I mentioned that the factory floor element is so important. This is the kind of case that inherently doesn't have U.S. plaintiffs. It has foreign plaintiffs. It had people who are French who worked in France, who worked in this plant in France, owned by a French company, and who did or did not have their exposures over there. So all of the work and the understanding about how to go about gathering evidence, including from third parties, physicians, the labor. Yeah, we understand. We got it on that part of the case. So we have made it clear that we will, Goodyear has made it clear that it will put itself before the jurisdiction of the appropriate French court. When it's required to produce documents, it will produce documents. And by the way, none of these other items, I believe, that have been suggested as circumstances where there were difficulty getting documents had to do with Goodyear U.S. or in the context of this case where Goodyear has said, if we're told to produce documents, we will produce documents. We'll defend ourselves. I mean, Goodyear is not going to lie down whether the case is in the United States or the case is in France. It will defend itself. But if it has to produce documents according to the French procedures, Goodyear will produce documents. If there's liability, Goodyear will pay a judgment, pay a final judgment. That's just very clear. But the point is that this isn't about being in France for some reason other than that's where these events occurred, that's where the witnesses are, that's where the vast majority of the documents are. We're given to believe by Mr. Pridell that a lot of the scientific documentation is in Akron and the chemists and all those people would be problematic for French jurisdiction. Your Honor, that's the same argument that's been made in other foreign factory floor cases and been rejected. But I suggest to you here that particularly where the question is warnings and representations. That's what this case is about. This isn't about a manufacturing defect. It's not about some design problem except to the extent that absence of warnings becomes a design issue. It really has nothing centrally to do with the supposed science in Akron. Now, will there be some materials in the U.S.? Yes. But they're not the ones that are first of all in volume, not the ones that are going to be in the same volume. Secondly, remember that Goodyear has said, if there are documents that you need and are entitled to, we will produce them. On the other hand, over in France, it's a whole lot of third parties, former employees, people who never were employees ever that are in possession of documents, and Goodyear is going to have to somehow go and figure out a way to get those and bring them back here. So it's a lot easier for a plaintiff in a French court, in this case, to get party documents, ours, than it would be for Goodyear in a U.S. court to get non-party documents. And that's a particular point that some courts have made, and I would make again to you. If there are no further questions, I don't think that there's anything else that I need to present here. No reason you must use all your time. We're okay with that. Right, Your Honor. And maybe I'll get some points for that. But if there are no additional questions, then I'll take my seat. So to quickly transition, I'm not sure what my opponent actually said, whether Goodyear would abide by French courts or by Akron courts with respect to the document production. What I do note is the difference in languages between the conditions. They'll abide by any court. They said they would abide by any court. They have to live here. I don't mean to interrupt, but they have to live here. They have to live there. Usually you want to get along with the courts. Going to the merits, there were a few points I wanted to stress. First of all, the very peculiarity of this case is that Goodyear caused in Akron harm to people in Amiens. What we've asserted as part of our claims, and it is a different point than the one that were made in the cases cited by my opponent, is that Goodyear in Akron actually committed facts that are operational facts, material to causation in that case. Basically what I'm saying is the conduct in Akron caused harm. Why? And what are those facts? Well, Akron, Goodyear in Akron, controls the number of tires produced in France every day. It controls the type of tires in France. It controls the manners in which those tires are produced. And if I needed to go into very little detail, it actually controls what ventilation system, if any, is installed in France. To balance that, we're also thinking, as you're describing that, that the place where all this took place, the factory, with the ventilation, etc., and the individuals in the factory, and the workers, are all in France, right? I understand. The harm is in France. In fact, it is our burden to prove harm. But before we can come close to discussing harm, there will be the questions of discussing their conduct, establishing that on the basis of what we already asserted without the benefit of discovery. They, in fact, in Akron, Goodyear, in Ohio, committed all those conducts that caused harm. And we cite to a Third Circuit case, the Loney case, where precisely the focus of the inquiry that the Third Circuit suggested should have been made was what type of evidence is going to matter. If we don't meet our burden here, if we don't produce the elements of the harm, we'll have no case. And moving to my last point, and it's certainly, your court had questions about the differential review that you have of the district court decision. Well, when it commits errors of law such as not giving to plaintiffs any degree of deference to plaintiff's choice, well, there is authority to allow this court to reverse the district court decision. And in fact, on that point, the degree of deference, the district court just restates the rule established by the U.S. court in Piper, and doesn't say what should be the level of deference. They say, foreign plaintiffs are entitled to less deference, and that's it. And we don't know what is applied. And in fact, in those situations, courts, again, the Third Circuit in Loney, in the Loney case, considered that because they didn't tell actually the standard, they in fact didn't grant any deference. And we have cases where, such as cases of the Second Circuit that I will finish now, where basically says the Iragori case, which is often cited here, basically says, look, in order to establish the degree of deference that you should give a foreign plaintiff, a plaintiff, you should look at what were the motives to come to the jurisdiction. And here are the motives, as I said before starting my argument, is to get the documents, the testimonies that Goodyear has been, from the very beginning, refusing to give us. All right. Thank you both for your arguments. We'll consider your case carefully and issue an opinion in short order. Thank you. Thank you, Your Honor. And then we're ready to adjourn court.